UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JULIUS HARTZ, JR. | CIVIL ACTION |
| VERSUS | NO. 08-4566 |
| MICHAEL J. ASTRUE. COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | SECTION "I" (2) |

## FINDINGS AND RECOMMENDATION

Plaintiff, Julius Hartz, Jr., successfully pursued a complaint in this court against the Social Security Administration ("the SSA") for review of the agency's denial of disability benefits to him. He has filed a "fee petition," supplemented by a "response to request for more definite statement," which has been referred to me. Record Doc. Nos. 27, 29 and 32. Read as a whole, plaintiff's submissions seek an attorney's fee for work done in this court in the amount of $7,896.00, which represents twenty-five percent (25%) of the past-due benefits recovered by plaintiff and currently being withheld by the SSA. The fee petition states that plaintiff's counsel's "contract with Mr. Hartz specified a fee of 25% of past due benefits recovered" and that he spent a total of fifteen (15) hours for work done on the case in this court. Record Doc. No. 27 at p. 2; Record Doc. No. 29 at p. 1.

The SSA filed a response to the petition, in which it "objects to an award of attorney's fees in the amount of $7,896.00 . . . because this fee is unreasonable in light

of the actual time spent in the case." The SSA argues that such an award would "result in compensation of $526.40 per hour," which would be a "windfall" in violation of the guidelines for interpreting 42 U.S.C. § 406(b) established by the United States Supreme Court in <u>Gisbrecht v. Barnhart</u>, 535 U.S. 789 (2002). Record Doc. No. 31 at pp. 1-2.

After this matter was referred to me, I ordered plaintiff's counsel to submit an affidavit providing additional information necessary to determine the propriety of his requested fee, and he complied. Record Doc. Nos. 33 and 34. In his affidavit, plaintiff's counsel, Thomas R. Schmidt, states that his normal hourly billing rate for non-contingent fee cases is $160 per hour. He affirms that he is a 1999 graduate of Tulane University Law School, has been practicing law since he was admitted to the bar that year and "has been handling Social Security cases, as well as personal injury, workers' compensation, succession, divorce, custody, domestic support and small business matters" since he was admitted to practice. Record Doc. No. 34 at p. 1.

Section 406(b) of the Social Security Act permits an award of attorney's fees to a disability benefits claimant's counsel who successfully pursues an appeal in court, with the fees to be paid out of the past due benefits that were awarded to the claimant.

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a <u>reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits</u> to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions

of section 405(i) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, <u>no other fee may be payable</u> or certified for payment for such representation except as provided in this paragraph.

42 U.S.C. § 406(b) (emphasis added).

Section 406(b) establishes the "exclusive regime for obtaining fees for successful representation of Social Security benefits claimants" in court and provides for a reasonable fee, not to exceed 25 percent of accrued benefits. <u>Gisbrecht</u>, 535 U.S. at 794, 795-96, 804-05. "Congress thus sought to protect claimants against 'inordinately large fees.'" <u>Id.</u> at 805.

In <u>Gisbrecht</u>, the Supreme Court stated that Section 406(b)

> does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court. Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases. Congress has provided one boundary line: Agreements are unenforceable to the extent that they provide for fees exceeding 25 percent of past-due benefits. Within the 25 percent boundary, . . . the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered. . . .
> 
> Courts that approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness, have appropriately reduced the attorney's recovery based on the character of the representation and the results achieved. . . . If the attorney is responsible for delay, for example, a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court. If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order. . . . [The] reviewing court should disallow windfalls for lawyers . . . . [T]he court

3

> may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal billing charge for noncontingent-fee cases.

Id. at 807-08 (citing 42 U.S.C. § 406(b)(1)(A)) (footnotes, internal quotations and additional citations omitted).

Eight years after Gisbrecht, the Fifth Circuit stated that the Supreme Court's opinion "has resulted in confusion and conflicting outcomes in the decisions of our lower courts." Jeter v. Astrue, 622 F.3d 371, 374 (5th Cir. 2010). The difficulties arose

> because the Gisbrecht Court began by explicitly rejecting the application of the "lodestar method to calculate fees under § 406(b)," and then concluded by stating that "[i]f the benefits [resulting from the contingency fee] are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order [to] . . . disallow windfalls for lawyers." We are not surprised that many of our lower courts have interpreted this as a contradictory mandate: lower courts must not employ the lodestar method to determine whether the hourly rate is excessively high and the fee thus unreasonable, but if the hourly rate is excessively high, then lower courts may declare the fee to be a windfall and, ultimately, unreasonable.

Id. at 377 (quoting Gisbrecht, 535 U.S. at 798, 808) (footnotes omitted).

In Jeter, therefore, the Fifth Circuit closely examined Gisbrecht and clarified "the question of whether district courts may employ the lodestar method to determine whether an attorney fee constitutes a 'windfall' under Gisbrecht." Id. at 374. The appeals court held that Gisbrecht "forbid[s] exclusive reliance on the lodestar method to determine the

4

reasonableness of a 42 U.S.C. § 406(b) attorney fee, [but] we do not conclude that Gisbrecht precludes a court's consideration of the lodestar method altogether." Id. The Fifth Circuit found

> that it is possible to construe Gisbrecht such that its prohibition against lone reliance on the lodestar method still permits a court to include a lodestar calculation in its consideration of the fee–specifically, in instances where the court simultaneously relies on <u>additional factors to support its determination that the contingency fee constitutes an unearned advantage to the attorney</u>–such that the fee award may be considered a windfall.

Jeter, 622 F.3d at 377 (emphasis added).

The Fifth Circuit emphasized the "significant" distinction between Section 406(b)'s "exclusive regime for obtaining fees" payable from the plaintiff's own recovery, Gisbrecht, 535 U.S. at 795-96, and cases brought under the fee-shifting statutes for which the lodestar method was developed. Plaintiffs in cases subject to fee-shifting

> can offer to pay their attorneys money above and beyond what they might recover under the applicable fee-shifting statute, if and when they are successful. This gives the fee-shifting plaintiffs the ability to expend their own resources–if they wish to–in order to obtain better counsel. A Social Security claimant, however, cannot pay his counsel more than twenty-five percent of the unpaid benefits he receives if his attorney is successful. . . . As a result, "[t]he <u>lodestar method under-compensates attorneys for the risk they assume in representing [Social Security disability] claimants</u> and ordinarily produces remarkably smaller fees than would be produced by starting with the contingent-fee agreement."

Jeter, 622 F.3d at 378-79 (citing Gisbrecht, 535 U.S. at 796, 801-02) (quoting Crawford v. Astrue, 586 F.3d 1142, 1149 (9th Cir. 2009)) (emphasis added).

"[B]y limiting contingency fees to no more than twenty-five percent, 'Congress thus sought to protect claimants against inordinately large fees and also to ensure that attorneys representing successful claimants would not risk nonpayment of [appropriate] fees.'" Id. at 379 (quoting Gisbrecht, 535 U.S. at 805). The different congressional purposes for fee-shifting statutes explain why

> the Gisbrecht Court proscribes exclusive, primary reliance on the lodestar method to determine the reasonableness of a § 406(b) fee award. It is clear that the Gisbrecht Court first instructed our lower courts to give the contingency fee agreement "primacy"–recognizing that this would in some instances result in an excessively high fee award to an individual attorney –and justifying this potential for excessively high fees on the basis that § 406(b) is not a fee-shifting statute. Although in some instances a twenty-five percent contingency fee may result in a seemingly large fee, a particular claimant's attorney often is not compensated at all for Social Security work in federal court. . . . Therefore, the best reading of Gisbrecht highlights the most significant distinction between the lodestar method's role in fee-shifting statutes and its inapposite role in § 406(b): because § 406(b) is not a fee-shifting statute, the § 406(b) fee award constitutes the sole means by which claimants can compensate–and thereby secure their access to–competent counsel.

Id. (footnote omitted).

The Fifth Circuit then discussed the question that had confounded the lower courts post-Gisbrecht.

> With this understanding of Gisbrecht in mind, the closing paragraph of Gisbrecht may seem a mystery. Although the Gisbrecht Court went to great lengths to explain its denouncement of the lodestar method for § 406(b) reasonableness determinations, the Court concluded by instructing lower courts that, "[i]f the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is . . . in order

6

[to] . . . disallow windfalls for lawyers." . . . And so the question post-Gisbrecht is really the following: if lower courts are not to resort first to the lodestar method when determining whether a fee is reasonable under § 406(b), may a lower court give the lodestar method any consideration in its determination of whether a contingency fee constitutes a "windfall"?

Id. at 379-80 (quoting Gisbrecht, 535 U.S. at 808).

The Fifth Circuit answered "yes" to this question and explained the procedure that district courts must employ when awarding attorney's fees under the standards set by the Supreme Court.

> [W]e conclude that Gisbrecht's concluding reference to downward adjustments for windfalls must be read in accordance with Gisbrecht's instruction that courts are not to rely exclusively on the lodestar method. . . .
> . . . [W]e conclude that courts may consider the lodestar in their analyses so long as the court can **articulate additional factors demonstrating that the excessively high fee would result in an unearned advantage**. In other words, the Gisbrecht Court's reference to windfall leaves room for consideration of an effective hourly fee rate, but only so long as this mathematical calculation is accompanied by consideration of whether an attorney's success is attributable to his own work or instead to some unearned advantage for which it would not be reasonable to compensate him.
> Any other reading would give attorneys a perverse incentive to delay proceedings or expend unnecessary hours in an effort to prolong successful litigation–all to ensure that their § 406(b) fee would not be reduced based on its appearing excessively high in comparison to the number of hours they expended. Likewise, we do not read Gisbrecht's "windfall" as support for the proposition that experienced, competent counsel should be punished for accomplishing an arduous task in a shorter span of time than less-experienced, less-aggressive counsel. Accordingly, we interpret Gisbrecht's prohibition on the lodestar method as an affirmation that **if a claimant's success on appeal can be attributed to his attorney's endeavors before the district court, then that attorney should reap the**

7

>     **benefit of his work**–even if he managed to accomplish a great deal in a small window of time. In this way, Gisbrecht's "windfall" does not preclude attorneys from recovering what may mathematically seem like a high fee award if the attorney's success on appeal is of his own making.
>     Thus, our district courts may consider the lodestar method in determining the reasonableness of a § 406(b) fee, but the lodestar calculation alone cannot constitute <u>the</u> basis for an "unreasonable" finding.

Id. at 380-81 (footnotes and some citations omitted) (underlined emphasis by the Fifth Circuit) (bold emphasis added).

In Jeter, the Fifth Circuit affirmed the district court's award of attorney's fees because "the district court did not rely exclusively on the lodestar method to find [the attorney's] requested fee unreasonable. Instead, the district court considered the resulting hourly fee rate in combination with a list of additional factors the district court found combined to demonstrate that the fee constituted an unearned windfall under Gisbrecht . . . ." Id. at 381.

The appeals court declined to mandate any particular factors that the district court should consider when determining whether a requested fee is excessive. However,

>     the district court must discuss the factors that demonstrate that the success on appeal is not of the attorney's making, but rather, is attributable to some other source for which it would be unreasonable to compensate the attorney. . . .
>         . . . . We do note, however, that in the absence of more specific guidance from above, lower courts have considered a myriad of factors that may demonstrate to the court whether the fee is an unearned windfall. For instance, in Brannen v. Barnhart, one of our lower courts explained that:
>         [t]o guard against windfalls, some courts consider additional factors not explicitly proffered in Gisbrecht. These include

> > risk of loss in the representation, experience of the attorney, percentage of the past-due benefits the fee constitutes, value of the case to a claimant, degree of difficulty, and whether the client consents to the requested fee. . . .
>
> Civ. A. No. 99-325, 2004 WL 1737443, at *5 (E.D. Tex., July 22, 2004).
>
> While we are not limiting courts' consideration of what constitutes a windfall to some exhaustive list, we are instructing our courts that Gisbrecht's windfall is not a simple reiteration of the lodestar method. . . . Instead, Gisbrecht commands that where lower courts look to the lodestar method to evaluate the ratio of fee earned to number of hours expended, they cannot find that a particular fee award would result in a windfall unless the court can articulate additional, specific factors to demonstrate that the resulting high fee was unearned by the attorney–and thus not attributable to the attorney's representation of the client before the court.

Id. at 381-82 (emphasis added).

Applying the foregoing standards to the instant fee petition and considering the contingent fee agreement, the risk of loss in the representation, the experience of counsel, the results achieved and the time expended, I find that the contingent fee requested by plaintiff's counsel would result in an inordinately high fee. The first two factors militate in favor of Schmidt's attorney's fees request, but the remaining factors demonstrate the unreasonableness of that request.

First, the existence of a contingent fee agreement indicates that plaintiff has consented to payment of a 25 percent fee. "When, as here, the agreement calls for a fee of twenty-five percent of past-due benefits–the same percentage allowed by statute–the fee contemplated by the agreement, if not presumptively reasonable, is at least a forceful

9

starting point and solid benchmark." Brannen, 2004 WL 1737443, at *6. Nonetheless, the district court "may not presume the legitimacy or reasonableness of a fee petition simply because the claimant has approved the fee. The court must serve as an independent check, to ensure that fee petitions yield reasonable results in each particular case." McDermott v. Astrue, No. H-04-1866, 2010 WL 599186, at *3 (S.D. Tex. Feb. 17, 2010) (citing Gisbrecht, 535 U.S. at 807). "As noted in Gisbrecht, while primacy is given to the contingent fee agreement, it is exposure to court review plus the statute's twenty five (25) percent limitation that provides a check on that agreement to prevent it from resembling an adherence contract." Rohrer v. Astrue, No. 06-1242, 2010 WL 173829, at *5 (W.D. La. Jan. 15, 2010) (citing Gisbrecht, 535 U.S. at 807).

Second, the Fifth Circuit and district courts in this circuit have acknowledged the high risk of loss inherent in Social Security appeals and the fact that a particular claimant's attorney often is not compensated at all for Social Security work in federal court. Jeter, 622 F.3d at 379 & n.9 (citing Mentzell v. Astrue, 623 F. Supp. 2d 1337, 1340-41 (M.D. Fla. 2008)); DeVaul v. Comm'r, Soc. Sec. Admin., No. 6:07-CV-418, 2012 WL 314189, at *2 (E.D. Tex. Feb. 1, 2012); Charlton v. Astrue, 3:10-CV-0056-O-BH, 2011 WL 6325905, at *4 (N.D. Tex. Nov. 22, 2011) (citing Social Security Advisory Board, Disability Decision Making: Data And Materials at 86 (Jan. 2001)), report & recommendation adopted, 2011 WL 6288029 (N.D. Tex. Dec. 14, 2011);

Stoneking v. U.S. Comm'r Soc. Sec. Admin., No. 09-cv-1020, 2011 WL 3328538, at *2 (W.D. La. July 13, 2011), report & recommendation adopted, 2011 WL 3418402 (W.D. La. Aug. 2, 2011). Despite the risk, Schmidt accepted the representation.

The other factors indicate that a 25 percent fee is unreasonable in this case. While the lawsuit in this court was successful and plaintiff's counsel was in no way responsible for any delay, the benefits recovered were somewhat large in comparison to the amount of time counsel expended in this court. Although Schmidt states in his affidavit that he "has been handling Social Security cases" since he was admitted to the bar in 1999, this court's electronic records indicate that he has been an attorney of record in only seven cases in this court since 2000 and that the instant case is the only Social Security appeal in which he has participated. Nor is Schmidt listed as attorney of record in any Social Security case in the electronic databases of the Middle and Western Districts of Louisiana.

In addition, although the SSA opposed plaintiff's request for a remand at the initial briefing stage in this court, the positive result of a remand to the SSA was ultimately obtained with defendant's consent, after the presiding district judge conducted a status conference with the parties. The presiding district judge then entered a remand order that was based on legal grounds different from those argued by plaintiff's counsel in his original brief and his objections to the undersigned magistrate judge's report and

11

recommendation. Record Doc. No. 26. These facts indicate that the favorable result was not entirely attributable to the attorney's work, but was at least partially attributable "to some unearned advantage for which it would not be reasonable to compensate him." Jeter, 622 F.3d at 380

I also note that some of the time listed in counsel's original fee petition was spent on essentially clerical work, such as filing documents into the court's record, which should not be compensated at an attorney's full hourly rate. See Granville v. Astrue, No. 07-1505, 2010 WL 440092, at *2 (W.D. La. Feb. 4, 2010) (reducing requested contingent fee because of hours spent on administrative work); Carter v. Astrue, No. H-03-990, 2009 WL 577461, at *1-2 (S.D. Tex. Mar. 5, 2009) (reducing attorney's effective hourly rate as reflected in a contingent fee arrangement because some of the hours expended were more administrative than legal in nature or were excessive for the tasks listed).

Based on all of the factors discussed above, I find that an award of the full requested contingent fee would "constitute[ ] an unearned advantage to the attorney–such that the fee award may be considered a windfall." Jeter, 622 F.3d at 377; see also McDermott v. Astrue, No. H-04-1866, 2010 WL 599186, at *3 (S.D. Tex. Feb. 17, 2010) (after reviewing attorney's statement of hours expended, reducing effective hourly rate as unreasonable for this type of work and reducing number of hours expended because "issues were not easy but were not especially complex"). Awarding the full 25 percent

contingent fee would result in an effective hourly rate of more than $500 per hour, a rate more than three times plaintiff's counsel's normal hourly billing rate for non-contingent fee cases and a high rate <u>not</u> ordinarily awarded in this court, even for the most complex types of litigation. See, e.g., <u>Hornbeck Offshore Servs., L.L.C. v. Salazar</u>, No. 10-1663, 2011 WL 2214765, at *9 (E.D. La. June 1, 2011), <u>report & recommendation adopted as modified on other grounds</u>, 2011 WL 2516907 (E.D. La. June 23, 2011) (awarding "highest reasonable rate in this district of $450 per hour" to attorneys "with high degree of skill and experience" in case with national significance and extreme time constraints imposed by rapidly evolving events); <u>In re Vioxx Prods. Liab. Litig.</u>, 760 F. Supp. 2d 640, 660 (E.D. La. 2010) (approving hourly rate of $443.29, consisting of the average of all billing rates for all attorneys who participated in multidistrict, common benefit fund litigation); <u>Cedotal v. Whitney Nat'l Bank</u>, No. 94-01397, 2010 WL 5582989, at *13 (E.D. La. Nov. 10, 2010) <u>report & recommendation adopted as modified on other grounds</u>, 2011 WL 127157 (E.D. La. Jan. 14, 2011) (awarding rates of $315 for senior partners in 15-year-long ERISA litigation, based on current reasonable rate awards in this district); <u>Oreck Direct, LLC v. Dyson, Inc.</u>, No. 07-2744, 2009 WL 1649503, at *4 (E.D. La. June 8, 2009) (awarding a single rate of $400 for partners and associates in case brought under the Lanham Act and Louisiana Unfair Trade Practices Act).

Considering the positive results obtained by counsel and the efficiency with which he handled this matter in this court, together with his experience and expertise, I find that an effective rate somewhat higher than his usual non-contingent hourly rate of $160 per hour, but less than the effective hourly rate based on the contingent fee contract, is appropriate. Accordingly, I find that an hourly rate of $250 is reasonable in this case.

Having already reduced the requested effective hourly rate to reflect my consideration of the amount of attorney time spent on clerical tasks, I further find that counsel's 15 hours of work representing plaintiff was a reasonable number of hours. Multiplying those hours by a premium hourly rate of $250 for a total of $3,750.00 is a reasonable fee for the services rendered by plaintiff's counsel in this court.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's fee petition be GRANTED IN PART AND DENIED IN PART and that plaintiff's counsel be awarded $3,750.00 in reasonable attorney's fees under 42 U.S.C. § 406(b).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[1]

New Orleans, Louisiana, this \_\_\_12th\_\_\_ day of September, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[1] <u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.